EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos E. Aguilar Pérez, et al. <br> Demandantes <br><br> v. <br><br> Universal Insurance Company, et al. <br> Demandados <br> ———————————————————— <br><br> Garita Development, Inc. et als <br> Contra Coparte-Recurridos <br><br> v. <br><br> Royal Insurance Company of Puerto Rico <br> Coparte-Peticionaria | Certiorari <br><br> 2004 TSPR 143 <br><br> 162 DPR _____ |

Número del Caso: CC-1998-341

Fecha: 7 de septiembre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional de San Juan

Juez Ponente:

Hon. José L. Miranda de Hostos

Abogados de la Parte Peticionaria:

Lcdo. Amancio Arias Guardiola
Lcda. Carmen S. Vélez Vázquez
Lcda. Marilyn Aponte Nieves

Abogado de la Parte Contra Coparte-Recurridos:

Lcdo. Juan E. Nater Santana

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos E. Aguilar Pérez, et al
          Demandantes

                    vs.

Universal Insurance Company,
et al
          Demandados                    CC-1998-341    Certiorari
_____
Garita Development, Inc. et als
      Contra Coparte-Recurridos
                vs.

Royal Insurance Company of
Puerto Rico
      Coparte-Peticionaria


RESOLUCIÓN


San Juan, Puerto Rico, a 7 de septiembre de 2004

       A la moción de reconsideración, no ha lugar.

       Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió un Voto Disidente. El Juez Asociado señor Rebollo López y las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez no intervinieron.


                    Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Carlos E. Aguilar Pérez, et al
          Demandantes

              vs.

Universal Insurance Company,
et al
          Demandados                    CC-1998-341    Certiorari
_____
Garita Development, Inc. et als

              vs.

Royal Insurance Company of
Puerto Rico
       Coparte-Peticionaria

Voto Disidente emitido por el Juez Presidente señor Hernández
Denton


En San Juan, Puerto Rico, a 7 de septiembre de 2004

Por no estar de acuerdo con la denegación de la reconsideración del recurso de marras, emitimos este voto disidente.

En el caso de autos nos correspondía resolver si la aseguradora Royal Insurance Company of Puerto Rico, Inc. está obligada a brindarle representación legal a la Constructora Tolec, Inc. y a la desarrolladora Garita Development, Inc. en una acción por vicios ocultos instada contra estos últimos.

I

La peticionaria, Royal Insurance Company of Puerto Rico, Inc. (en adelante Royal Insurance)

solicitó la reconsideración de nuestra Sentencia de 30 de marzo de 2001, mediante la cual confirmamos la decisión del entonces Tribunal de Circuito de Apelaciones, que a su vez confirmó una sentencia parcial del Tribunal de Primera Instancia, Sala Superior de San Juan. En su dictamen, el foro de instancia le ordenó a la peticionaria Royal Insurance proveer representación legal a los recurridos, Constructora Tolec, Inc. y Garita Development, Inc. (en adelante Garita-Tolec), en una reclamación de daños y perjuicios instada contra éstos. Ordenó además el reembolso a Tolec-Garita de los pagos incurridos en concepto de gastos y honorarios de abogado en la referida demanda.

Evaluada la moción de reconsideración presentada por Royal Insurance, hubiésemos rectificado nuestra decisión anterior y revoquemos la Sentencia recurrida.

I

Durante el período de tiempo comprendido entre 1979 al 1982, Constructora Tolec, Inc. construyó el proyecto de viviendas Colinas de Cupey. La compañía Garita Development, Inc., por su parte, fue la entidad a cargo del desarrollo y la venta de los referidos inmuebles. Con el propósito de cubrir ciertas eventualidades durante la construcción del proyecto, se adquirieron pólizas de seguros contra todo riesgo de las llamadas seguro comprensivo de responsabilidad general (también conocidas como "comprehensive general liability"-CGL), primero de Eagle Star Insurance Company y luego de National Insurance Company, esta última vigente hasta el 2 de febrero de 1982. En 1981, Garita le vendió a los esposos Carlos Aguilar y Gladis Pérez un inmueble sito en el referido proyecto Colinas de Cupey.

Cuatro años luego de terminado el proyecto residencial, Taft Number Eighteen, Inc. adquirió de Royal Insurance una póliza "Special Multi-peril" (SMP-14519) con cubierta de seguro comprensivo de responsabilidad general, similar a las descritas anteriormente, para asegurar las operaciones de sus negocios. La póliza emitida por Royal Insurance cubrió durante el período de tiempo entre el 2 de febrero de 1986 hasta el 26 de febrero de 1991, e incluyó como entidades aseguradas a Garita, a Tolec y a Colinas de Cupey Development, Inc., entre otras. En dicha póliza se describían las propiedades, bienes y riesgos asegurados. De los autos no surge qué seguro, si alguno, cubrió las fechas desde el 1982 hasta el 1986.

El 18 de septiembre de 1990, el matrimonio Aguilar Pérez demandó a su aseguradora, Universal Insurance Co. y otros, por los daños personales y a la propiedad sufridos a consecuencia del paso del huracán Hugo en septiembre de 1989 y un leve terremoto que ocurrió posteriormente. En síntesis, se instó una reclamación por acción decenal en la que se alegó que en su propiedad existían vicios ocultos que afloraron a raíz del huracán y el terremoto, y que esos vicios se debían al pobre diseño de la obra, a la utilización de materiales de inferior calidad y a una inadecuada preparación del subsuelo, entre otros. A raíz de los alegados vicios, una pared del inmueble no resistió el impacto de vigas y columnas de madera de una terraza de una residencia cercana traídas por la fuerza de los vientos del huracán Hugo.

Dicha demanda fue enmendada en varias ocasiones para incluir como demandantes a Garita, Tolec y al Ing. Louis Tosi, su esposa la señora Julio Tosi y la sociedad Legal de gananciales compuesta

por ambos. En la tercera demanda enmendada, se incluyó como demandada a Royal Insurance como la aseguradora que cubría los daños reclamados. Por su parte, Royal Insurance contestó la demanda y levantó como defensa afirmativa que los daños reclamados no estaban cubiertos por la póliza expedida por éstos y que la responsabilidad de esta aseguradora estaba sujeta a los términos, límites y condiciones del contrato de seguro.

Posteriormente, Royal Insurance presentó una moción para que se dictara sentencia sumaria a su favor fundamentándose en que no tenía una póliza que ofreciese cubierta para la reclamación de la parte demandante, por no haber estado la póliza en vigor a la fecha en que ocurrieron los alegados vicios de construcción que dieron lugar a la demanda. Se alegó además, que aun de haber estado en vigor, la póliza expedida no ofrecía cubierta por vicios de construcción ni por <u>responsabilidad pública</u>, salvo los pactados en la póliza. Los demandantes se allanaron a la petición de Royal Insurance y el 18 de mayo de 1995 suscribieron una moción para desistir sin prejuicio en cuanto a su reclamación contra dicha aseguradora.

No obstante, la parte aquí recurrida, Garita-Tolec, había ya instado contra Royal Insurance una demanda contra co-parte en la que le solicitó, entre otras cosas, que satisficiese su obligación contractual de proveerle representación legal. En dicha demanda, Garita-Tolec expuso que, <u>aunque la póliza no tuviera cubierta por desperfectos de construcción, la obligación de proveer defensa es mucho más amplia que la de indemnizar,</u> toda vez que la reclamación contra Royal Insurance podría estar bajo la cubierta de la póliza--en vista de que se trataba de daños a terceras personas

producidos por un "proyecto terminado cubierto por la misma"—-se activaba la obligación de proveer asistencia legal.

Así las cosas, el Tribunal de Primera Instancia dictó una sentencia parcial en la cual desestimó la acción de los demandados contra Royal Insurance, pero ordenó que la aseguradora permaneciera en el pleito hasta resolverse la demanda de co-parte. Luego de varios incidentes procesales, el Tribunal de Primera Instancia emitió otra sentencia parcial ordenándole a Royal Insurance rembolsar a los recurridos los gastos incurridos hasta ese momento en concepto de honorarios de abogado y proveerles representación legal. Dicho foro fundamentó su decisión en la definición de la póliza de la cláusula "complete operations hazard" y en nuestra decisión en Meléndez Piñero v. Levitt & Sons, 129 D.P.R. 521 (1991). Concluyó el foro de instancia que la razón por la cual en 1986 se incluyó como entidad asegurada a Colinas de Cupey Inc. al expedirse una póliza contra todo riesgo con cubierta de "complete operations hazard"—no empece a que el proyecto se había completado y vendido en 1982—fue que el asegurado quiso mantener cubierta la garantía de que el producto funcionara adecuadamente y para el fin para el cual fue destinado. El foro de instancia señaló además que, Royal Insurance accedió a extender la póliza a dicho producto para incluir los daños que ocasionara el mismo después de terminado, incluyendo daños a la propiedad y a la persona.

Inconforme con dicha determinación, Royal acudió en apelación ante el entonces Tribunal de Circuito de Apelaciones, quien confirmó la sentencia parcial recurrida. Posteriormente, Royal Insurance presentó petición de certiorari ante este Tribunal, en

la que planteó, en síntesis, que erró el Tribunal de Circuito de Apelaciones al confirmar al foro de instancia en cuanto a su determinación del deber de proveer representación legal a los demandantes, a pesar de que claramente no existe cubierta para dicha reclamación.

Inicialmente declinamos ejercer nuestra jurisdicción pero, luego de una moción de reconsideración, expedimos el auto solicitado. El 30 de marzo de 2001 confirmamos, mediante Sentencia, la decisión apelada.

Hoy nos toca reconsiderar nuestra Sentencia, amparándonos en el más alto fin de justicia e interpretando el derecho sustantivo de forma que propenda una solución justa, rápida y económica, evitando demoras e injusticias innecesarias.[1]

## II

En el recurso ante nuestra consideración debíamos analizar, en esencia, si Royal Insurance tiene la obligación de proveer representación legal a su asegurada Garita-Tolec en la acción de daños y perjuicios presentada contra éstos. La negativa de Royal Insurance a proveer representación legal a Garita-Tolec está predicada en la inexistencia de una póliza vigente al momento de ocurrir los daños alegados en la demanda y, en la alternativa, en la inexistencia de cubierta por alegados vicios de construcción. Veamos con cierto detenimiento el derecho aplicable a la situación de marras.

## A

Es harto conocido en el área de los contratos de seguro que, cuando los términos, condiciones y exclusiones del mismo son

---

[1] 4 L.P.R.A. 36, 32 L.P.R.A. Ap. III, R.1

claros y específicos, y no dan margen a ambigüedades o diferentes interpretaciones, debe hacerse valer el mismo de conformidad con la voluntad de las partes, de igual forma que en cualquier otro contrato. En ausencia de ambigüedad, las cláusulas del contrato son obligatorias para las partes. Martínez Pérez v. U.C.B., 143 D.P.R. 554 (1997); Quiñónez López v. Manzano Pozas, 141 D.P.R. 139 (1996); García Curbelo v. A.F.F., 127 D.P.R. 747 (1991). Hoy reiteramos la norma de que, por ser de adhesión, las cláusulas obscuras de los contratos de seguro deben ser interpretadas libremente a favor del asegurado a tenor con el criterio hermenéutico *contra preferentem.* Ello, no obstante, no tiene el efecto de obligar a que se interprete a favor de éste una cláusula que claramente y sin ambigüedad le da la razón al asegurador en la controversia que se suscite entre ambos. Marín v. American Int'l Co. of PR, 137 D.P.R. 356 (1994); Barreras v. Santana, 87 D.P.R. 227 (1963).

Por otro lado, la interpretación de las pólizas de seguro tiene que ser cónsona con la norma que impone el Código de Seguros y que obliga a interpretar estos contratos "globalmente", a base del conjunto total de sus términos y condiciones, según se expresan en la póliza. Véase, Stokes v. Serrano Lecaroz, 145 D.P.R. 394 (1998); 26 L.P.R.A. sec. 1125. Por último, cuando examinamos una póliza en su totalidad para determinar el alcance de su cubierta, examinaremos además elementos extrínsecos que puedan arrojar luz sobre la intención de las partes, como podrían ser, la prima pactada, las circunstancias concurrentes con la negociación y las prácticas establecidas en la industria del seguro, 26 L.P.R.A. sec. 1125; Stokes v Serrano Lecaroz, *supra*.

B

Por otro lado, hemos expresado que el deber de una aseguradora de proveer defensa es aún más extenso que la obligación de indemnizar por daños, en la medida en que éstos estén cubiertos por una póliza de seguros. Este deber existe, en algunas circunstancias, aun cuando la aseguradora no esté obligada a indemnizar los daños causados por el asegurado a un tercero. PFZ Properties v. General Accident Ins. Co., 136 D.P.R. 881 (1994). No estamos aseverando que toda reclamación de un tercero contra un asegurado active el deber de proveer representación legal y defensa de una compañía aseguradora. Pero la normativa vigente establece que para negar una reclamación de representación legal debe surgir con meridiana claridad que la misma está fuera de la cubierta de la póliza, *Id.*

El deber del asegurador de "defender" al asegurado de acciones bajo la cubierta del contrato se mide, en primer lugar, por las alegaciones del demandante. Las alegaciones tienen que describir hechos que coloquen el daño dentro de la cubierta de la póliza. PFZ Properties v. General Accident Ins. Co., *supra;* Pagan Caraballo v. Silva, 122 D.P.R. 105 (1988); Vega v. Pepsi-Cola Bot. Co., 118 D.P.R. 661 (1987); Guerrido García v. U.C.B, *supra*. Así, la obligación de la compañía aseguradora de asumir la representación legal de su asegurado surgirá cuando de una interpretación liberal de las alegaciones surja la posibilidad de que el asegurado esté protegido por la póliza expedida, independientemente de cuál sea la adjudicación final del caso. No obstante, si la cubierta de la póliza claramente excluye los daños reclamados en las alegaciones, no podrá imponerse a la aseguradora

el deber de defender. <u>Martínez Pérez v. U.C.B.</u>, supra; <u>González v. The Commonwealth Ins. Co.</u>, 140 D.P.R. 673 (1996);<u>PFZ Properties v. General Accident Ins. Co.</u>, *supra*; <u>Pagán Caraballo v. Silva Ortiz</u>, *supra*; <u>Vega v. Pepsi-Cola Bot Co.</u>, *supra*; <u>Morales Garay v. Roldán Coss</u>, 110 D.P.R. 701 (1981).

Cuando en la demanda haya alegaciones que estén cubiertas por la póliza y otras que no lo estén, el deber de la aseguradora es asumir la defensa del asegurado, incluso sobre las alegaciones no cubiertas. El deber de defensa no cesa por el hecho de que las alegaciones no sean perfectas. Cualquier duda sobre si existe el deber de proveer defensa debe resolverse a favor del asegurado. <u>PFZ properties v. General Accident Ins. Co.</u>, *supra*; <u>Pagán Caraballo v. Silva Ortiz</u>, *supra*; <u>Barreras v. Santana</u>, *supra*. **Sin embargo, una reclamación que claramente queda excluida de la cubierta de una póliza no se convierte en un riesgo cubierto en virtud de unas alegaciones diseñadas para que se ajusten al lenguaje de la póliza**. Couch on Insurance 3d sec. 126:2.

Los tribunales hemos de examinar, caso a caso, las alegaciones o reclamaciones del asegurado o de los demandantes en daños y éstas han de compararse con las cláusulas del contrato de seguro del caso en particular, para determinar sobre el deber de la compañía aseguradora de ofrecer representación legal al asegurado. <u>PFZ Properties v. General Accident Ins. Co.</u>, *supra*.

III

A

Expuestas las doctrinas generales en cuanto al deber de la aseguradora de proveer defensa y de la interpretación de los contratos de seguros, enfoquémonos en la póliza en cuestión. Se

trata de una póliza especial de riesgos múltiple ("Special Multi-Peril")[2] con una cubierta de seguro comprensivo de responsabilidad general (comprehensive general liability insurance – CGL) que hemos tenido la oportunidad de interpretar anteriormente. Véase, Stokes v. Serrano Lecaroz, *supra*; Meléndez Piñero v. Levitt & Sons, 129 D.P.R. 521 (1991). Esta cubierta sigue la estructura conocida como "a todo riesgo" y de ordinario emplea el lenguaje y el formato adoptado como "póliza modelo" por la industria de seguros. Dicha cubierta contiene una cláusula que la industria aseguradora denomina "acuerdo general de cubierta" que dispone que la compañía aseguradora pagará por parte del asegurado toda suma de dinero que el asegurado esté obligado legalmente a pagar por daños físicos o daños a la propiedad **a los que el seguro aplique**, por no estar expresamente excluidos de la cubierta. El asegurador deberá proveer defensa legal contra cualquier reclamación con relación a esos daños.

Conforme a lo anterior, es una exigencia de umbral que determinemos qué riesgos están cubiertos por la póliza para determinar si procede o no la reclamación de defensa. Ello, ya que "el valor o la extensión de la cobertura S.C.R.G. (seguro comprensivo de responsabilidad general) se mide realmente, entonces, a base de cuáles riesgos permanecen garantizados". Meléndez Pinero v. Levitt & Sons, *supra*. Para llegar a esa determinación, debemos tomar en consideración las exclusiones, la

---

[2] La llamada *Special Multi-Peril Policy* generalmente comprende cuatro (4) tipos de cubierta. La primera es una cubierta para la propiedad del asegurado, la segunda para responsabilidad pública, la tercera para actos criminales y la cuarta para maquinaria y calderas. En esta ocasión la que nos interesa es la segunda.

designación de facilidades o <u>la propiedad específicamente cubierta</u>[3] y la descripción de riesgos contenidos en la póliza. <u>Stokes v. Serrano Lecaroz</u>, *supra.* La garantía amplia de "acuerdo general de cubierta" queda circunscrita por estos límites.

Las pólizas de seguro comprensivo de responsabilidad general de ordinario contienen, entre otras, disposiciones que ofrecen cubierta de responsabilidad por operaciones u obras en el lugar del negocio ("premises/operations"), productos ("products hazards") y obras completadas ("completed operations hazard"), tanto para los daños que se ocasionan a la propiedad, como para los daños físicos específicos a los que la póliza aplica. Debido a que la póliza del caso de autos tenía cubierta para estas tres categorías, el Tribunal de Primera Instancia determinó que la póliza en cuestión cubría los daños a la persona y a la propiedad que los demandantes alegan haber sufrido. Específicamente, estimó que al incluir como nombre del asegurado ("named insured") a la entidad Colinas de Cupey, Inc. <u>quedaban aseguradas todas las obras</u>

---

[3] Históricamente, el concepto de "seguro de propiedad" estaba limitado a los riesgos contra fuegos en los edificios, navíos y propiedad comercial construidos en madera. Hoy día, ese concepto se ha ampliado prácticamente a cualquier tipo de propiedad existente en el mundo moderno. Por ello, cuando nos encontramos ante una controversia de cubierta de seguro de propiedad, además de cuestiones colaterales como la existencia de la póliza, su validez y exigibilidad (enforceability), para determinar si cierta pérdida está cubierta por una póliza, debemos analizar:

1. Si la pérdida o el daño es del tipo requerido específicamente en la póliza como punto de partida mínimo para activar la responsabilidad de la aseguradora (policy's threshold specification of losses that will trigger the insurer's liability).
2. **Si la persona que sufre el daño o pérdida está asegurada dentro de la póliza.**
3. Si el daño o la pérdida ocurre dentro del período de vigencia de la póliza.
4. Si el daño o la pérdida se produce por uno de los riesgos dentro del alcance de la póliza. Couch on Insurance 3d sec.148:1, Property Insurance.
5.

completadas por esa entidad bajo la cláusula de "completed operations hazard". Ello, a pesar de que dichas obras fueron completadas y vendidas varios años antes de que el contrato de seguro suscrito entre las partes entrara en vigor.

Las cláusulas de "completed operations hazard" específicamente limitan la responsabilidad por daños físicos y a la propiedad a aquellas pérdidas que ocurren fuera del ámbito de la propiedad del asegurado y que surgen de las obras ("operations") **aseguradas**, una vez han sido completadas.[4] Por lo general se considera que una obra ha sido completada cuando el trabajo para el cual se procuró su seguro se ha terminado y es puesto al uso pretendido.[5]

Lo usual para estos tipos de cubierta es que la responsabilidad y los riesgos cubiertos **se restrinjan a facilidades o propiedades particulares que se designan en la póliza por medio de la dirección física exacta u otras especificaciones geográficas.**[6]

Por otro lado, en las cláusulas sobre operaciones y obras en el lugar del negocio ("premises/operations") se establece el ámbito de la cobertura de la responsabilidad del asegurado en cuanto a los daños a la propiedad y los daños físicos que sufren

---

[4] **Completed operations insurance coverage** for a contractor's liability for injuries or property damage suffered by third parties as the result of the contractor completing an operation. The contractor must take reasonable care in rendering a project safe and free from reasonable hazards. (Harvey W. Rubin, Barron's Dictionary of insurance terms, Third Edition, 1995, Pág. 92).

[5] Perhaps the most litigated issue under completed operations clauses is what constituted "completion". As a general rule, a contract or operation is deemed completed when the work contracted for or undertaken has been finished, and put to its intended use. Couch on Insurance 3d sec. 126:4.

[6] "The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges".

terceras personas y que surjan de las operaciones del asegurado o en su propiedad. De nuevo, la póliza restringe su cubierta **a determinada propiedad**, **y en estos casos no responde si las reclamaciones surgen de propiedades no cubiertas**. Por lo general estas pólizas también tienen cláusulas para excluir de la cubierta los daños ocasionados una vez la propiedad ha sido enajenada, Véase, Ostrager Barry B*., Handbook on Insurance,* 7th Ed., 1994 a la Pág. 222.

B

Un examen cuidadoso de expediente de autos revela que los endosos P-14 y P-15 de 12 de diciembre de 1998, extendieron por un período de 26 meses (hasta el 26 de febrero de 1991) la vigencia de la póliza en cuestión, dejando inalterados los restantes términos y condiciones.

Al examinar la "designación de las facilidades o propiedades" descritas como aseguradas en ese momento, **las únicas propiedades aseguradas eran**: una oficina en la calle Taft #18, una remodelación menor en el Temple Beth Salom en Santurce, un terreno baldío (vacant land)[7] no especificado, y un proyecto de construcción en concreto.

Como proyecto completado ("completed operations") estaba descrito una construcción en concreto no especificada, valorada en $105,000.00, y por la que se pagó una prima por "bodily injury" de

---

[7]In addition to insurance on the designated premises, the insured may purchase additional coverage for "vacant land" which he or she currently owns or which he or she may acquire in the future, Such coverage does not extend to land containing buildings or other structures, or improvements, as vacant land refer to land unoccupied, unused, and in its natural state. Couch on Insurance 3d sec. 126.11.

$24.00 y una prima por "property damage" de $50.00, para un total de $74.00.

Si comparamos esa Forma L 6395ª con la Forma original suscrita en 1986, notamos que varios de los proyectos en las facilidades o propiedades que habían sido descritas se fueron eliminando de la cubierta original y se fueron añadiendo otras. De hecho, en la medida en que se fueron eliminando y añadiendo mediante endosos los distintos proyectos en que las entidades aseguradas se fueron involucrando durante la vigencia de la póliza, vemos también que se fueron modificando las primas de dichas cubiertas. No obstante, **en ningún momento durante la vigencia de la póliza suscrita por Royal se menciona como <u>propiedad asegurada</u> el proyecto de Colinas de Cupey, ni facilidad alguna de dicho proyecto,** como tampoco se mencionan los proyectos de San Vicente Development Corp. o Canóvanas Corp., a pesar de que se les menciona como entidades aseguradas ("named insured").

La póliza vigente al momento del Huracán Hugo y del "terremoto"—los alegados hechos que hicieron aflorar los vicios de construcción—únicamente contenía como "operación completada" una construcción en concreto no especificada valorada en $105,000.00, por la que se pagó una prima de $74.00. El Tribunal de Primera Instancia concluyó que por una prima de $74.00 quedaban cubiertas **todas las casas del proyecto Colinas de Cupey que habían sido construidas y entregadas 4 años antes de haberse suscrito el contrato de seguros y haberse emitido la póliza.**

De darle cabida a esa interpretación tendríamos que concluir que por esos mismos $74.00 quedaban cubiertos **todas las obras de todas las otras entidades nombradas como aseguradoras en el endoso**

**#17, incluyendo a Garita, Tolec, Taft Number Eighteen Corporation, José Martí 68, Inc., San Vicente Development Corp., Canóvanas Corp., Floral Park Development Corp., el Ingeniero Louis Tosi y su esposa Julia Tosi, y sus sucesores en interés, bien sean corporativos u otros, constituidos o por constituirse, ya que todos estos aparecen como nombres del asegurado ("named insured").** Todo ello, sin necesidad de que se describan las propiedades en la póliza no los proyectos completados por estas entidades. Dicha interpretación no tiene cabida en nuestro sistema de derecho, y es contraria a la forma en que se interpretan los contratos de seguro en nuestra jurisdicción. (Una cosa son los "named insured" y otra las propiedad aseguradas).

En cuanto a la cláusula sobre operaciones y obras en el lugar de negocio ("premises/operations"), la póliza de autos contiene una cláusula para excluir de la cubierta propiedad vendida por el asegurado mediante venta condicional, acuerdo fiduciario, pago a plazo u otro plan de pago diferido, una vez se haya entregado al cliente.[8]

C

De un examen de los términos y condiciones de la póliza también surge claramente que las "obras terminadas" a las que se refiere son aquellas que han sido descritas en la póliza y que son terminadas o finalizadas durante la vigencia de ésta. La responsabilidad de la aseguradora es la que pueda surgir en cuanto a las obras, los trabajos y operaciones en que esté involucrado o que esté llevando a cabo el asegurado, **en propiedades que estén**

---

[8] Property sold by the insured under conditional sale, trust agreement, installment payment, or other deferred payment plan, after delivery to customers.

**descritas en la póliza. Bajo ninguna de las cubiertas de la póliza**
**están incluidas las alegaciones de la parte recurrida.**

Por otro lado, en el caso de marras no hay indicio alguno de que la intención de las partes fuese concederle a la póliza un efecto retroactivo como para que cubriera la propiedad objeto de este litigio, la cual nunca estuvo cubierta por esta póliza, y extender así la cubierta a una propiedad que fue entregada varios años antes de que la póliza entrara en vigor. No puede exigírsele a Royal que asuma una responsabilidad que claramente no acordó cubrir.

La parte recurrida alegó en su comparecencia ante nos, que continuó adquiriendo su póliza general contra todo riesgo con la cubierta de "completed operations" para cubrir todos los proyectos de la parte demandada, incluyendo el proyecto de Colinas de Cupey donde ubica la propiedad del demandante, aunque no estuviesen especificados en la póliza. Como ya una vez dijéramos en Meléndez Piñero v. Levitt & Sons, *supra*, "difícilmente una compañía familiarizada con el negocio de desarrollo de proyectos urbanos pueda pensar que al adquirir un seguro de responsabilidad realmente obtiene un seguro de propiedad, una fianza de cumplimiento o una garantía de bienes y servicios".[9]

En el caso de autos no hay cláusulas obscuras que interpretar. Surge con meridiana claridad que la reclamación de Garita-Tolec está fuera del ámbito de la cubierta de la póliza. En vista de que no hay cubierta por los hechos reclamados, no hay un

---

[9] Durante la construcción del proyecto de Colinas de Cupey las pólizas SCRG vigentes para ese tipo de negocio fueron las expedidas por Eagle Star Insurance Company y National Insurance Company. No obstante, de ninguna forma estamos adjudicando que esas pólizas cubran o no los alegados daños.

deber de proveer representación legal ni defensa. Tampoco debe Royal reembolsar los gastos incurridos en concepto de honorarios y representación legal.

Por los fundamentos expuestos anteriormente, hubiésemos reconsiderado nuestro anterior dictamen en el caso de autos y revocado la sentencia del Tribunal de Apelaciones. En vista de que una mayoría de este Tribunal decide no expedir el auto solicitado, emitimos este voto disidente.


                         FEDERICO HERNÁNDEZ DENTON
                              Juez Presidente