EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Michael G. Nissen Holland<br><br>Demandante-peticionario<br><br>vs.<br><br>Frederick K. Genthaller<br><br>Demandado-recurrido | Certiorari<br><br>2007 TSPR 197<br><br>172 DPR \_\_\_\_ |

Número del Caso: CC-2006-552

Fecha: 7 de noviembre de 2007

Tribunal de Apelaciones:

      Región Judicial de San Juan

Juez Ponente:

      Hon. Dolores Rodríguez de Oronoz

Abogado de la Parte Peticionaria:

      Lcdo. Ignacio Rivera

Abogado de la Parte Recurrida:

      Lcdo. Winston Vidal Gámbaro

Materia: Desahucio, Daños, Incumplimiento de Contratos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Michael G. Nissen Holland

    Demandante-peticionario

       vs.                  CC-2006-552       *CERTIORARI*

Frederick K. Genthaller

    Demandado-recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 7 de noviembre de 2007

El Condominio Stella Maris, sito en el área del Condado, es un edificio residencial sometido al régimen de propiedad horizontal. Éste consta de 36 unidades de vivienda y 21 estacionamientos. En la escritura matriz del condominio se identificaron específicamente los 21 apartamentos con el uso exclusivo a un estacionamiento. En lo aquí pertinente, se estableció que el Apartamento 4-A tendría el uso exclusivo del estacionamiento 4-A, mientras que el Apartamento 4-D no figura entre los 21 apartamentos con el uso exclusivo a un estacionamiento.[1]

---

[1] El Condominio Stella Maris quedó sometido al régimen de propiedad horizontal mediante la Escritura Número 166 otorgada el 11 de febrero de

(Continúa . . .)

Debemos señalar que, a pesar de que en la escritura matriz cada estacionamiento aparece identificado por número de apartamento, los estacionamientos fueron físicamente identificados utilizando una numeración del 1 al 21. Según surge de un memorando emitido por la Junta de Directores del Condominio, de fecha 29 de diciembre de 1984, al Apartamento 4-A le corresponde el uso exclusivo del estacionamiento número 16.[2]

Así las cosas, el 17 de octubre de 2002 Michael Nissen Holland, entonces dueño del Apartamento 4-A, presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda en contra de Frederick K. Genthaller, dueño del Apartamento 4-D. En ésta alegó que como dueño del Apartamento 4-A le corresponde el estacionamiento número 16 y que Frederick Genthaller ocupaba dicho estacionamiento sin su consentimiento.

---

1969 ante el notario Carlos J. Faure. En esta escritura se estableció lo siguiente respecto a los espacios de estacionamiento: "[t]he building has twenty one (21) parking spaces for motor vehicles and the following apartments shall have the exclusive use of the space marked with a like number. … APARTMENT NUMBER FOUR-A (4-A) --- SPACE NUMBER FOUR-A (4-A), APARTMENT NUMBER FOUR-B (4-B) SPACE NUMBER FOUR-B (4-B), APARTMENT NUMBER FOUR-C (4-C) SPACE NUMBER FOUR-C (4-C), APARTMENT NUMBER FIVE-A (5-A) SPACE NUMBER (5-A)….

[2] Previo a ello, el DACO emitió una Resolución ordenándole a la Junta de Directores del Condominio Stella Maris asignar y correlacionar los estacionamientos enumerados del 1 al 21 a los apartamentos que aparecen en la escritura matriz con uso exclusivo de un estacionamiento. Ello ante una querella presentada por el entonces dueño del Apartamento 6-B con respecto a la asignación e identificación de los estacionamientos.

Frederick Genthaller contestó la demanda y negó que el estacionamiento número 16 le correspondiese a Michael Nissen Holland. Posteriormente, Nissen Holland presentó demanda enmendada para añadir como codemandantes a Michael John Myers y a Gabriela Guzmán Ortiz, nuevos adquirentes del Apartamento 4-A.[3]

Luego de varios trámites procesales, Frederick Genthaller presentó una solicitud de sentencia sumaria. En ésta adujo que él, y todos sus antecesores con interés respecto al Apartamento 4-D, han tenido el estacionamiento número 16 específicamente identificado en sus contratos de venta y que todos ellos han poseído y utilizado dicho estacionamiento de forma continua, sin interrupciones, abierta, notoria y pacíficamente por aproximadamente 35 años.[4] Alegó, en síntesis, que conforme a los hechos

_____

[3] En dicha demanda enmendada también se añadió a la Junta de Directores del Condominio Stella Maris como parte codemandada. No obstante, el 20 de agosto de 2004 la parte demandante solicitó el desistimiento, con perjuicio, de la acción en contra de la Junta de Directores.

[4] De las determinaciones de hecho del tribunal de instancia surge que mediante un primer contrato de venta la desarrolladora del Condominio Stella Maris le vendió al señor Bravo Torruella el Apartamento 4-A. De dicho contrato surge que el apartamento tiene estacionamiento asignado, mas no se menciona el número específico del estacionamiento. Posteriormente, durante la construcción del edificio, la designación de las letras de los apartamentos fue invertida, de manera que el Apartamento 4-D se convirtió en el Apartamento 4-A y viceversa. Para el momento en que se otorgó la escritura de compraventa del señor Bravo Torruella, éste adquirió el Apartamento 4-D. De dicha primera inscripción en el Registro, no surge que el Apartamento 4-D goce de derecho de uso de estacionamiento. No es hasta la tercera inscripción en el
(Continúa . . .)

admitidos por el propio Nissen Holland en un requerimiento de admisiones, al momento de presentarse la demanda ya se había consumado a su favor la prescripción adquisitiva ordinaria o, en la alternativa, la prescripción adquisitiva extraordinaria.

Michael Nissen Holland, Michael J. Myers y Gabriela Guzmán Ortiz presentaron oportuna oposición al respecto y adujeron que en el presente caso existe controversia material sobre el cumplimiento de los requisitos necesarios para la configuración de la prescripción adquisitiva, específicamente, la posesión ininterrumpida. Señalaron que siempre ha existido una pugna real, constante e incontrovertible sobre la titularidad del estacionamiento número 16 y que la sentencia sumaria no es el vehículo apropiado para determinar si se configuró la prescripción adquisitiva alegada.

El 30 de noviembre de 2005 el Tribunal de Primera Instancia dictó sentencia en la cual declaró <u>con lugar</u> la solicitud de sentencia sumaria, resolviendo que el derecho

---

Registro --mediante la cual se hace constar que el señor Egon Richar Heinz compró el Apartamento 4-D del señor Bravo Torruella-- que se señala que el Apartamento 4-D tiene derecho al uso del estacionamiento número 16. Mientras, la escritura matriz del Condominio Stella Maris, la primera inscripción en el Registro del Apartamento 4-A y sus subsiguientes inscripciones indican que el Apartamento 4-A tiene el derecho de uso del estacionamiento número 4-A. <u>Por lo cual, el mismo estacionamiento aparece inscrito en el Registro de la Propiedad a favor del Apartamento 4-A como estacionamiento número 4-A y a favor del Apartamento 4-D como estacionamiento número 16</u>.

de uso del estacionamiento número 16 pertenece con exclusividad al propietario del Apartamento 4-D, el señor Frederick Genthaller. Determinó que Genthaller advino titular del estacionamiento en cuestión mediante prescripción adquisitiva ordinaria, puesto que cumplió con todos y cada uno de los requisitos para su consumación previo a que Nissen Holland presentara su demanda. En lo pertinente, señaló que la posesión fue ininterrumpida debido a que, con excepción del señor Nissen Holland, ningún propietario del Apartamento 4-A presentó reclamación judicial para reivindicar su derecho sobre el estacionamiento.

De dicha determinación, Nissen Holland, Myers y Guzmán Ortiz acudieron --mediante recurso de apelación-- ante el Tribunal de Apelaciones. Señalaron que no era procedente la sentencia sumaria dictada por el tribunal de instancia debido a que existen dudas, avaladas con la extensa documentación presentada, sobre la interrupción de la prescripción adquisitiva. Adujeron que el tribunal de instancia debió celebrar vista evidenciaria en la cual se pasara testimonio oral y documental sobre diversas reclamaciones extrajudiciales entre los respectivos dueños de los Apartamentos 4-A y 4-D sobre el estacionamiento 16 en cuestión. Solicitaron la revocación de la sentencia sumaria emitida y la devolución del caso al foro de instancia para la celebración de una vista en los méritos

sobre la titularidad del estacionamiento 16 del Condominio Stella Maris.

El 16 de mayo de 2006 el foro apelativo intermedio emitió sentencia en la cual confirmó el dictamen del tribunal de instancia, aunque por fundamentos distintos. Determinó que en el presente caso no existen hechos medulares en controversia que impidan la resolución sumaria del mismo y que se consumó la prescripción adquisitiva, pero por la vía extraordinaria. Señaló que independientemente de las disputas que a través de largos años ha habido con los sucesivos dueños del Apartamento 4-A por el estacionamiento, nunca se había radicado un pleito ante los tribunales hasta que Michael Nissen Holland entabló la demanda del caso de epígrafe el 17 de octubre de 2002; esto es, luego de haber transcurrido más de 30 años desde que en el 1969 el primer adquirente y, posteriormente, los sucesivos dueños del Apartamento 4-D comenzaron a poseer ininterrumpidamente el estacionamiento en disputa. Expuso, además, que las distintas reclamaciones extrajudiciales aducidas por Nissen Holland no constituyen una citación judicial hecha al poseedor capaz de interrumpir civilmente la posesión conforme al Artículo 1845 del Código Civil. Ello debido a que únicamente la presentación oportuna de una demanda ante el Tribunal de Primera Instancia, y el diligenciamiento del correspondiente emplazamiento al demandado, puede interrumpir civilmente la posesión.

Inconformes, Michael Nissen Holland, Michael John Myers y Gabriela Guzmán Ortiz acudieron --mediante recurso de *certiorari*-- ante este Tribunal. Aducen que procede revocar la sentencia emitida por el foro apelativo intermedio debido a que éste incidió:

> … al determinar que el tribunal de instancia estuvo acertado al conceder la sentencia sumaria del recurrido Genthaller cuando había hechos en controversia que ameritaban una vista plenaria.

> … al dictaminar que ante la prescripción extraordinaria solamente una acción judicial interrumpe dicho término.

Expedimos el recurso. Con posterioridad a la comparecencia de las partes mediante sus respectivos alegatos, le concedimos permiso a la parte demandante-peticionaria para presentar un alegato complementario respecto a que tampoco procede la disposición sumaria del presente caso debido a que existe controversia material respecto a si el uso exclusivo de los espacios de estacionamiento concedido en la escritura matriz es o no una servidumbre predial discontinua la cual, por disposición expresa del Artículo 1653 del Código Civil, no puede adquirirse mediante prescripción adquisitiva. Solicitan que revoquemos la sentencia emitida por el Tribunal de Apelaciones y que se ordene la celebración de una vista plenaria ante el Tribunal de Primera Instancia. Resolvemos.

I

La sentencia sumaria es el mecanismo procesal mediante el cual se le confiere discreción al juzgador para dictar sentencia sobre la totalidad de una reclamación o sobre cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. Véase Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Para que proceda dictar sentencia por la vía sumaria, es imprescindible que, de los documentos que acompañan la solicitud o que obran en el expediente del tribunal, no surja controversia legítima sobre hechos materiales del caso y que, por ende, sólo reste aplicar el derecho. Pérez Rosado v. El Vocero, 149 D.P.R. 427 (1999).

"El tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede". Vera Morales v. Bravo Colón, res. el 27 de febrero de 2004, 2004 TSPR 30.

Es norma reiterada que este mecanismo procesal es un remedio discrecional y que su uso debe ser mesurado. Sólo cuando el tribunal esté claramente convencido de la ausencia de controversia respecto a hechos materiales del caso y de que la vista evidenciaria es innecesaria,

procederá dictar sentencia sumaria. Incluso, aun cuando no se presente prueba que controvierta la presentada por el promovente, no significa necesariamente que procede la sentencia sumaria. Vera Morales v. Bravo Colón, ante; Sucesión Maldonado Ortiz v. Sucesión Maldonado Hernández, res. el 9 de noviembre de 2005, 2005 TSPR 166.

"En los casos en que no exista una clara certeza sobre los hechos materiales y esenciales de la controversia, no procede una sentencia sumaria." Sucesión Maldonado Ortiz v. Sucesión Maldonado Hernández, ante. De otro modo, el uso irrestricto del mecanismo de sentencia sumaria constituiría una violación al debido proceso de ley, pues "[t]omando en consideración que la sentencia sumaria es un remedio extraordinario y que su concesión está a discreción del tribunal, el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". E.L.A. v. Cole Vázquez, res. el 13 de abril de 2005, 2005 TSPR 46.

II

Conforme a los hechos y el derecho antes esbozado, nos corresponde resolver si en el caso ante nuestra consideración existe controversia sobre algún hecho material que impida su resolución sumaria y amerite la

celebración de una vista plenaria ante el Tribunal de Primera Instancia. Veamos.

En primer término, la parte demandante-peticionaria nos señala que existe controversia respecto a si se interrumpió la prescripción adquisitiva en cuestión. Aduce en apoyo a su señalamiento que debe celebrarse una vista plenaria en la que se pase prueba sobre las distintas reclamaciones extrajudiciales habidas entre los respectivos dueños de los Apartamentos 4-A y 4-D, las cuales entiende fueron suficientes para impedir que los distintos dueños del Apartamento 4-D hayan poseído ininterrumpidamente el estacionamiento número 16 durante el tiempo que requiere la ley.

Sabido es que la prescripción adquisitiva, también denominada usucapión, "consiste en la adquisición del dominio u otro derecho real poseíble por medio de la posesión civil mantenida durante el tiempo y con arreglo a las condiciones que requiere la ley". J.R. Vélez Torres, Curso de Derecho Civil, Los bienes los derechos reales, Tomo II, Puerto Rico, 1983, p. 263. Véase además Artículo 1830 del Código Civil, 31 L.P.R.A. § 5241. Para que se entienda consumada la usucapión, independientemente de que sea por la vía ordinaria o la extraordinaria, deben siempre coincidir ciertos requisitos, a saber: 1. capacidad de los sujetos involucrados, entiéndase, del que pierde el derecho real de que se trate y de aquel que lo adquiere o usucapiente; 2. que recaiga sobre cosas

susceptibles de usucapión; y 3. que la posesión sea en concepto de dueño, pública, pacífica e ininterrumpida por todo el tiempo que establece la ley. Véase J.R. Vélez Torres, ante, p. 266-276. Véase además Artículo 1841 del Código Civil, 31 L.P.R.A. § 5262.

Con respecto a la interrupción de la usucapión, el Artículo 1843 del Código Civil, 31 L.P.R.A. § 5264, específicamente establece que la "posesión se interrumpe para los efectos de la prescripción, natural o civilmente". En lo aquí pertinente, el Código Civil dispone que se interrumpe civilmente la posesión: 1. por la citación judicial hecha al poseedor, aunque sea por mandato de tribunal o juez incompetente[5]; 2. por el requerimiento judicial o notarial, siempre que dentro de dos meses de practicado se presente ante el tribunal o juez la demanda sobre posesión o dominio de la cosa cuestionada; y 3. por el reconocimiento expreso o tácito que el poseedor hiciere del derecho del dueño. Véase Artículo 1845, 1847 y 1848 del Código Civil, 31 L.P.R.A. § 5266, 5268 y 5269.

De una lectura de lo antes expuesto, se deduce que las reclamaciones extrajudiciales, capaces de interrumpir

---

[5] Por disposición expresa del Artículo 1847 del Código Civil, 31 L.P.R.A. § 5267, "[s]e considerará no hecha y dejará de producir interrupción la citación judicial: (1) Si fuere nula por falta de solemnidades legales. (2) Si el actor desistiere de la demanda o dejare caducar la instancia. (3) Si el poseedor fuere absuelto en la demanda".

la prescripción extintiva, <u>no</u> interrumpen la prescripción adquisitiva. Ello debido a que "la interrupción… civil es de derecho estricto y sólo tiene lugar cuando concurre alguna de las causas taxativamente marcadas por la ley". <u>Sucesión Carrera v. Sucesión Castillo</u>, 105 D.P.R. 691, 694 (1977).

Frente a la prescripción adquisitiva "… no es justificado invocar, pese a su similitud, el artículo 1973 [del Código Civil de España, Artículo 1873 nuestro,] relativo a los modos de interrumpir la prescripción extintiva, ya que sus mandatos no pueden proyectarse frente a la prescripción del dominio". J. Santos Briz, <u>Derecho de Cosas</u>, Derecho Civil, Teoría y Práctica, Tomo II, Madrid, 1973, p. 246.[6] Según expusimos en <u>Sucesión Carrera v. Sucesión Castillo</u>, ante, p.694-695, citando a Manresa:

> en la prescripción extintiva se comprende fácilmente que cualquier gestión del interesado, aunque sea extrajudicial, baste para que surta el efecto de interrumpir la posesión, pues su objeto es asegurar la subsistencia de una acción o de un derecho que forma parte del patrimonio del que interrumpe y que en tal concepto la ley debe amparar y hacer respetar, dando todas las posibles facilidades para mantener su virtualidad y efectos. Por eso el Código,… autoriza en su Art. 1.973 [Artículo 1873 nuestro] que la simple reclamación particular o extrajudicial del acreedor interrumpa el curso de la prescripción citada. Pero en la

---

[6] El Artículo 1873 del Código Civil, 31 L.P.R.A. § 5303, establece que: "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial al acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

adquisitiva son distintas las circunstancias y la razón legal, pues como el fin de la misma es la adquisición del dominio o de algún derecho real que antes de ella no se tiene, o no forma parte del patrimonio del que prescribe,… y cuya adquisición viene a favorecer la ley por … motivos de interés social …, desde luego resulta de una evidencia indiscutible, que en vez de facilidades debe poner trabas la ley a la interrupción para no impedir el perfeccionamiento y la plena constitución o creación del derecho que concede al poseedor por consecuencia de la posesión continuada, sin contradicción eficaz, por el plazo establecido por la misma con dicho objeto.

En el presente caso, no existe controversia alguna respecto a la naturaleza extrajudicial de las reclamaciones aducidas por la parte demandante-peticionaria. Dicha parte así lo admite en sus distintos escritos y no se deduce otra cosa de una lectura del expediente.[7] Resulta evidente, entonces, que no existe

---

[7] Entre las reclamaciones extrajudiciales aducidas por la parte demandante-peticionaria se señalan las siguientes: 1. memorandos emitidos por la Junta de Directores del Condominio Stella Maris que le adjudican el estacionamiento 16 al Apartamento 4-A; 2. cartas del Presidente de la Junta de Directores cuestionando el reclamo de los dueños del Apartamento 4-D a un estacionamiento; 3. certificaciones del Registro de la Propiedad; 4. notificaciones en la cual se les solicita derrama a los condóminos de acuerdo con la participación porcentual de los titulares en las cuales el Apartamento 4-A aparece con un mayor porcentaje debido al estacionamiento; 5. el reglamento del Condominio Stella Maris; y 6. carta de Michael Nissen Holland dirigida a la Junta de Directores reclamando el estacionamiento. La parte demandante-peticionaria también señala que existe una resolución del DACO en la cual se le reconoce al Apartamento 4-A el uso exclusivo de un estacionamiento. No obstante, de un examen de la referida resolución surge que en ésta no se le adjudicó derecho alguno de estacionamiento al Apartamento 4-A. La resolución emitida por el DACO fue resultado de un pleito entre los dueños de

(Continúa . . .)

controversia material sobre la posesión ininterrumpida de los dueños del Apartamento 4-D respecto al estacionamiento. Las reclamaciones extrajudiciales señaladas por la parte demandante-peticionaria resultaron insuficientes para lograr interrumpir dicha posesión, pues, según expusimos anteriormente, las reclamaciones extrajudiciales no interrumpen la posesión de la prescripción adquisitiva.

Por consiguiente, no erraron los tribunales recurridos al estimar que no existe controversia sobre la posesión ininterrumpida del estacionamiento número 16 por parte de los distintos dueños del Apartamento 4-D y al no celebrar una vista plenaria al respecto.

III

Ahora bien, la parte demandante-peticionaria aduce, además, que existe controversia respecto a si el uso exclusivo de los estacionamientos es un bien susceptible de ser usucapido. Entiende que debe celebrarse una vista plenaria para dilucidar si el uso exclusivo a los estacionamientos es o no una servidumbre predial discontinua, la cual, por disposición de ley, no puede ser

_____

los apartamentos 6-B y 6-C y los entonces dueños de los apartamentos 4-A y 4-D no formaron parte de dicho proceso. Por ende, resulta innecesario discutir si un proceso ante el DACO constituye una citación judicial capaz de interrumpir la prescripción adquisitiva.

adquirida mediante prescripción adquisitiva.[8] Coincidimos en que en las circunstancias particulares de este caso se debe celebrar un juicio plenario para determinar si el uso del estacionamiento es un bien susceptible de ser usucapido.

Según señaláramos anteriormente, la usucapión sólo puede recaer sobre cosas susceptibles de ser adquiridas mediante usucapión. De no serlas, no podrá consumarse la usucapión sobre ellas, independientemente de que se cumplan los demás requisitos dispuestos en la ley.

De un análisis del expediente surge que existe controversia sobre la susceptibilidad de que el uso exclusivo de los estacionamientos pueda ser adquirido mediante usucapión. Los documentos que forman parte del expediente no nos permiten concluir con certeza la naturaleza del derecho concedido en la escritura matriz respecto a los estacionamientos. Esto es, si se trata de un derecho de propiedad u otro derecho real, o de una relación de servidumbre entre cada apartamento, como predio dominante, y cada espacio de estacionamiento, como predio sirviente.

En Pellón Lafuente v. O'Clare, 98 D.P.R. 692 (1970), reconocimos que los titulares del Condominio San Jorge

---

[8] El Artículo 475 del Código Civil, 31 L.P.R.A. § 1653, sobre servidumbres que sólo se adquieren por título, dispone que: "[l]as servidumbres continuas no aparentes y las discontinuas, sean o no aparentes, sólo podrán adquirirse en virtud de título."

tenían derecho a un espacio de estacionamiento. Señalamos que no era necesario resolver si el derecho a un estacionamiento era un derecho de propiedad, una relación de servidumbre entre cada apartamento y cada local de estacionamiento, u otra clase de derecho real debido a que la escritura matriz del condominio expresamente establecía la naturaleza privada de las áreas destinadas a estacionamiento y el derecho de cada condómino a, al menos, un espacio de estacionamiento.

No obstante, el caso hoy ante nuestra consideración presenta una situación completamente distinta. La escritura matriz del Condominio Stella Maris se limita a hacer referencia a un "uso exclusivo de los estacionamientos", sin adjudicar expresamente la titularidad de los mismos a los apartamentos. Tampoco se hace referencia a los estacionamientos al describir las cabidas de los apartamentos con el uso exclusivo a un estacionamiento, ni se designan como elemento común del condominio. Resulta aún más confuso que en algunos documentos que forman parte del expediente se enuncia que los apartamentos tienen derecho al "uso exclusivo de un estacionamiento", lo que puede sugerir que el uso de los estacionamientos es una servidumbre predial discontinua; mientras que en otros documentos se utilizan vocablos de los cuales se puede inferir que los estacionamientos son

propiedad privada, susceptible de ser adquirida mediante usucapión.[9]

Siendo así, no estamos claramente convencidos de que no exista controversia sobre el hecho de que los estacionamientos puedan, o no, ser adquiridos mediante usucapión y de que no sea necesaria una vista evidenciaria al respecto. Esto es un hecho material y necesario para la correcta disposición del presente caso, pues, según antes expuesto, la susceptibilidad a que la cosa pueda ser usucapida es un requisito indispensable para que la prescripción adquisitiva se entienda consumada.

El Tribunal de Primera Instancia debió haberse percatado de que de los documentos que forman parte del expediente surge controversia sobre el cumplimiento de dicho requisito, en vez de decretar la consumación de la prescripción adquisitiva enfocándose únicamente en si la posesión por parte de los distintos dueños del Apartamento 4-D fue en concepto de dueño, pública, pacífica e ininterrumpida por el tiempo establecido en la ley. El propio demandado Frederick Genthaller, en su solicitud de sentencia sumaria, trajo a la atención del Tribunal de Primera Instancia, como un hecho alegadamente

---

[9] En la escritura matriz, se utiliza la frase "apartments shall have the exclusive use of the space marked with a like number". En la Resolución emitida por el DACO se utiliza la frase "use of parking space". En documentos emitidos por la Junta de Directores se utilizan las frases "exclusive use", "parking right" o se hace referencia a los estacionamientos como un "non-transferable addition to the particular apartment".

incontrovertido, el que la normas aplicables a las servidumbres prediales discontinuas, entre éstas su insusceptiblidad de ser adquiridas por usucapión, no eran aplicables al presente caso. Sin embargo, de los documentos que forman parte del expediente no surge con claridad y certeza que las normas relativas a las servidumbres prediales discontinuas sean inaplicables a la presente situación de hechos.

En consecuencia, somos del criterio que en el caso ante nuestra consideración existe una controversia legítima sobre un hecho material que impide la resolución sumaria del mismo y que, por ende, procede devolver el caso ante el Tribunal de Primera Instancia para la celebración de una vista plenaria sobre la susceptibilidad de los estacionamientos a ser adquiridos mediante usucapión.

La ambigüedad del lenguaje utilizado en la escritura matriz, unida al lenguaje confuso de los restantes documentos que forman parte del expediente, requiere que ante el Tribunal de Primera Instancia se presente prueba sobre la intención que tuvieron las partes involucradas al momento de redactarse la escritura matriz del Condominio Stella Maris. Claro está, tomando en consideración los actos anteriores, coetáneos y posteriores de los contratantes, al igual que el uso o la costumbre y demás circunstancias indicativas de la intención contractual, conforme a lo establecido en los Artículos 1234 y 1239 del

Código Civil, 31 L.P.R.A. § 3472 y 3477, y en nuestra jurisprudencia.[10] Sabido es que cuando no es posible determinar la voluntad o intención de los contratantes con la mera lectura literal de las cláusulas contractuales, deberá recurrirse a evidencia extrínseca para juzgarla, utilizando principalmente los actos anteriores, coetáneos y posteriores de los contratantes, el uso o costumbre y demás circunstancias indicativas de la intención contractual, incluyendo la ocasión, circunstancias, personas y el acuerdo que se intentó llevar a cabo. Municipio de Mayagüez v. Lebrón, res. el 21 de abril de 2006, 2006 TSPR 70; Irizarry López v. García Cámara, 155 D.P.R. 713 (2001).

---

[10] El Artículo 1234 del Código Civil, 31 L.P.R.A. § 3472, dispone que: "[p]ara juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos coetáneos y posteriores al contrato". También podrá tomarse en consideración los actos anteriores a la contratación y demás circunstancias indicativas de la intencion contractual. Véase, Municipio de Mayagüez v. Lebrón, res. el 21 de abril de 2006, 2006 TSPR 70; Ramírez, Segal & Latimer v. Rojo Rigual, 123 D.P.R. 161 (1989); Cooperativa La Sagrada Familia v. Castillo, 107 D.P.R. 405 (1978); y Hoffman v. Cuadrado, 14 D.P.R. 590 (1908). Por otro lado, el Artículo 1239 del Código Civil, 31 L.P.R.A. § 3477, establece que: "[e]l uso o costumbre del país se tendrá en cuenta para interpretar las ambigüedades de los contratos, supliendo en éstos la omisión de cláusulas que de ordinario suelen establecerse".

Ciertamente, resolver lo contrario sería despojar a una parte de su día en corte, en clara violación al debido proceso de ley.[11]

IV

En mérito de lo antes expuesto, procede revocar las sentencias recurridas y devolver el caso al Tribunal de Primera Instancia para que se celebre una vista plenaria para dilucidar cuál es el derecho aplicable en los estacionamientos en controversia y si con respecto a ese derecho se configuran los requisitos de la usucapión.

---

[11] Frederick Genthaller —mediante alegato adicional ante este Tribunal— alega que no debemos considerar los argumentos aducidos por la parte demandante-peticionaria respecto a la posible aplicación de las normas sobre servidumbres prediales discontinuas al presente caso, debido a que dicho asunto no fue traído ante el Tribunal de Primera Instancia. No le asiste la razón.

Según señaláramos antes, el propio Frederick Genthaller trajo a la atención del tribunal de instancia dichas normas alegando su inaplicabilidad y aunque la parte demandante-peticionara se enfocó en discutir que existía controversia respecto a la posesión ininterrumpida, era deber del tribunal considerar si los estacionamientos son un bien susceptible de usucapirse, pues ello es un requisito esencial para decretar la consumación de la prescripción adquisitiva. Además, es norma reiterada que, aun cuando no se presente prueba que controvierta la presentada por el promovente de una sentencia sumaria, no significa que proceda la misma si de la totalidad de los documentos que acompañan la solicitud o que obran en el expediente surge una controversia legítima sobre un hecho material, como, en efecto, ocurrió en este caso.

Se dictará Sentencia de conformidad.


                        FRANCISCO REBOLLO LÓPEZ
                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Michael G. Nissen Holland

    Demandante-peticionario

       vs.            CC-2006-552      *CERTIORARI*

Frederick K. Genthaller

    Demandado-recurrido

SENTENCIA

San Juan, Puerto Rico, a 7 de noviembre de 2007

Por los fundamentos expuestos en la Opinión que antecede, se dicta Sentencia revocatoria de las emitidas tanto por el Tribunal de Apelaciones como por el Tribunal de Primera Instancia, devolviéndose el caso a este último foro para que celebre una vista plenaria donde deberá dilucidar cuál es el derecho aplicable en los estacionamientos en controversia y si con respecto a ese derecho se configuran los requisitos de la usucapión.

Así lo pronunció, manda el tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino. El Juez Asociado señor Rivera Pérez no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo